**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID W. NOBLE, JR,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR, *et al.*,<br><br>*Defendants*. | Civil Action No. 24 - 2307 (SLS)<br>Judge Sparkle L. Sooknanan |

**<u>MEMORANDUM OPINION</u>**

In October 2022, David Noble, Jr. lost an election for the presidency of the National Association of Letter Carriers (NALC) labor union. Mr. Noble filed a complaint with the Secretary of Labor asking the Secretary to sue in federal district court to set aside the election on the basis that it violated the Labor-Management Reporting and Disclosure Act (LMRDA). The Department of Labor investigated Mr. Noble's complaint and declined to sue. Although it found that the 2022 NALC election violated the LMRDA, it ultimately concluded that those violations did not affect the outcome of the election. Mr. Noble now brings this action against the Secretary and the Department of Labor, asking this Court to set aside the Secretary's decision under the LMRDA and the Administrative Procedure Act (APA). Both Parties have moved for summary judgment. Because the Secretary's reasons for declining to sue are inadequate, the Court remands the decision to the agency and directs the Secretary to provide a supplemental statement of reasons.

## BACKGROUND

Mr. Noble was a losing candidate in NALC's October 2022 election for union president by a margin of 73.6 percent to 26.4 percent. DOL 000405.[1] Shortly after the election, Mr. Noble filed an election protest with NALC, which NALC denied. Fed. Defs.' Mot. 2, ECF Nos. 39 & 40. Mr. Noble then commenced a private action against NALC in federal district court alleging that the 2022 election violated the LMRDA. *See Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, No. 22-cv-1613, 2022 WL 17613057, at *1 (D.D.C. Dec. 13, 2022). The district court dismissed his action, finding no violation of the LMRDA. *Id.* at 1, 5. While this ruling was on appeal, Mr. Noble filed a complaint with the Secretary of Labor under Title IV of the LMRDA, alleging various violations of the Act and asking the Secretary to sue to set aside the NALC election. DOL 000025–DOL 000030. The Secretary investigated Mr. Noble's complaint and declined to sue, issuing a Statement of Reasons on August 8, 2023, explaining the decision. DOL 000004–DOL 000005. The Secretary relied in part on the prior dismissal of Mr. Noble's private suit. *Id.*

On May 24, 2024, the U.S. Court of Appeals for the District of Columbia Circuit reversed and remanded the dismissal of Mr. Noble's private action against NALC, finding at least one violation of the LMRDA. *See Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 103 F.4th 45, 48 (D.C. Cir. 2024). Mr. Noble then filed this lawsuit seeking APA review of the Secretary's decision declining to initiate an enforcement action. *See* Original Compl., ECF No. 1. On February 28, 2025, the Secretary conducted a supplemental investigation and issued an Amended Statement of Reasons, again deciding not to sue. This time, with the benefit of the D.C. Circuit's decision, the Secretary found that the 2022 NALC election violated the LMRDA. DOL 000010–DOL 000015. But the Secretary concluded that the violations did not affect the outcome of the election. *Id.*

[1] For clarity, the Court will cite the documents in the Parties' Joint Appendix, ECF Nos. 47, 47-1, 47-2, 47-3, according to their internal pagination.

Mr. Noble now challenges the sufficiency of that decision memorialized in the Amended Statement of Reasons under the LMRDA and the APA. *See* Second Am. Compl., ECF No. 19.

Both Parties have cross-moved for summary judgment. Pl.'s Mot., ECF No. 38; Fed. Defs.' Mot. Those motions are fully briefed and ripe for review. Pl.'s Opp'n, ECF Nos. 41 & 42; Fed. Defs.' Reply, ECF No. 45.

**LEGAL STANDARD**

Title IV of the LMRDA governs union elections. Under 29 U.S.C. § 481, union members are guaranteed "free and democratic" elections "modeled on political elections in this country where the assumption is that voters will exercise common sense and judgment in casting their ballots." *Loc. 3489, United Steelworkers of Am., AFL-CIO v. Usery*, 429 U.S. 305, 309 (1977) (cleaned up). "Every national or international labor organization, except a federation of national or international labor organizations, shall elect its officers not less often than once every five years by secret ballot among the members in good standing or at a convention of delegates chosen by secret ballot." 29 U.S.C. § 481(a). And the LMRDA ensures that "[a]dequate safeguards to insure a fair election shall be provided[.]" *Id.* § 481(c).

The LMRDA also permits any union member to challenge an election believed to be in violation of the statute's fair election procedures by filing a complaint with the Secretary of Labor after exhausting internal union remedies. 29 U.S.C. § 482(a). The Act requires the Secretary of Labor to file suit in federal district court to invalidate the election if probable cause exists that (1) the election violated the Act, and (2) the violation may have affected the election's outcome. *Dunlop v. Bachowski*, 421 U.S. 560, 569–71 (1975); 29 U.S.C. § 482(b). Although this decision lies in the hands of the Secretary, the LMRDA does not confer boundless discretion on the agency. "[T]he language of the LMRDA indicate[s] that the Secretary [i]s required to file suit if certain clearly defined factors [a]re present. The decision therefore [i]s not beyond the judicial capacity to

supervise." *Heckler v. Chaney*, 470 U.S. 821, 834 (1985) (cleaned up). Instead, the Secretary's reasoning is reviewed under the standard provided in 5 U.S.C. § 706(2)(A). *Dunlop*, 421 U.S. at 565–66. Reviewing courts "must determine with some measure of confidence whether or not the discretion not to sue, which remains in the Secretary, has been exercised in a manner that is neither arbitrary nor capricious." *Doyle v. Brock*, 821 F.2d 778, 782 (D.C. Cir. 1987) (cleaned up).

"If the Secretary does not find probable cause to believe that there were any violations of the Act that may have affected the outcome of the election" or otherwise declines to bring suit, a "union member is entitled to a statement of the Secretary's reasons for declining to sue." *Brennan v. Solis*, 934 F. Supp. 2d 297, 306 (D.D.C. 2013). In a challenge to the Secretary's determination, courts are "confined to examination of the 'reasons' statement, and the determination whether the statement, without more, evinces that the Secretary's decision is so irrational as to constitute the decision arbitrary and capricious." *Dunlop*, 421 U.S. at 572–73. "[A]lthough detailed findings of fact are not required, the statement of reasons should inform the court and the complaining union member of both the grounds of decision and the essential facts upon which the Secretary's inferences are based." *Id.* at 573–74. "[W]here the statement is facially insufficient, the court may require supplemental explanation from the Secretary." *Usery v. Loc. Union No. 639 Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 543 F.2d 369, 379 (D.C. Cir. 1976) (citing *Dunlop*, 421 U.S. at 574–75).

## DISCUSSION

Mr. Noble challenges the Secretary's Amended Statement of Reasons. He argues that the Secretary should have sued to set aside the 2022 NALC election because of violations of the LMRDA's publication requirement, 29 U.S.C. § 481(c), monitoring requirement, *id.* § 481(c), secret ballot requirement, *id.* § 481(a), and adequate safeguard requirement, *id.* § 481(c). Pl.'s Mot. Mem. 11–27, ECF No. 38-1. The Court finds that the Secretary's Amended Statement of Reasons

is facially insufficient to support the agency's decision. Accordingly, the Court orders the Secretary to provide a supplemental statement of reasons.[2]

**A. Publication Requirement**

Mr. Noble first argues that NALC violated the LMRDA by refusing to publish his campaign advertisements in its magazine (the *Postal Record*) from February through August 2022. DOL 00010–DOL 00011. Instead, NALC ran his ads only in its "election issue" mailed in September 2022. *Id.* The Court agrees that NALC violated the Act. The LMRDA requires unions to "comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization." 29 U.S.C. § 481(c). And Mr. "Noble's request that NALC 'publish' his advertisement falls within the text of the statute." *Noble*, 103 F.4th at 50.

The Secretary agreed that the NALC election violated this provision. DOL 000012. But the Secretary declined to sue, finding that the violation did not affect the election's outcome:

> [N]o candidate received preferential treatment, and all had the opportunity to mail or email standalone campaign literature at any point from as early as May until the ballots went out. Further, the Department's investigation established that your campaign advertisement appeared in the September/October issue ("election issue") of the *Postal Record*, which was mailed to NALC's membership on September 9, 2022, and September 12, 2022. NALC mailed ballots to its members after September 12, 2022, and ballots were due by October 21. Therefore, your campaign advertisement was distributed to the membership before ballots were voted. Under these circumstances, the effect of the violation was mitigated, and therefore this violation did not affect the outcome of the election.

---

[2] The Parties raise disputes about several threshold issues—including the proper standard of review, the scope of the record reviewable by the Court, and the available remedies. Pl.'s Mot. Mem. 3–11; ECF No. 38-1; Fed. Defs.' Mot. 11–15, ECF Nos. 39 & 40. As the Parties' briefing illustrates, the D.C. Circuit's jurisprudence on these issues is unsettled. But the Court need not wade into them to resolve the pending motions.

*Id.* The Secretary thus relied on two things: (1) that Mr. Noble could have distributed his campaign materials himself, and (2) that his materials did appear in an issue of the *Postal Record* distributed in September 2022. *Id.* The Court takes these in turn.

First, the Secretary determined that NALC's violation of the publication requirement was mitigated because all candidates could "mail or email standalone campaign literature." *Id.* This finding runs headfirst into one of the core guarantees of the LMRDA that unions "distribute campaign materials" using their own channels of communications independently from the candidates themselves. *Noble*, 103 F.4th at 50 (cleaned up). This requirement is "designed to offset the 'inherent advantage over potential rank and file challengers' possessed by incumbent union leadership." *Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 476 (1991) (quoting *Wirtz v. Glass Bottle Blowers Assoc.*, 389 U.S. 463, 470 (1968)). "[T]he candidate's right to distribute literature . . . in the union press" is essential to the Act's guarantee of free elections. *Id.* (cleaned up). Otherwise, "the union newspaper which is the chief vehicle for communication with the members" would be subject to the "incumbents' control." *Id.* (citation omitted). If the Secretary were correct, a violation of the publication requirement could never be the basis for a suit—as candidates are always free to distribute their campaign materials themselves. But Congress decided otherwise in requiring that unions distribute campaign literature to their members. The Secretary cannot disregard those legislative findings by concluding that the publication requirement is not necessary to ensure the fairness of a union election.

Nor is the Secretary's position consistent with the agency's past practice. In its own briefing, the agency acknowledges other cases where it has filed suits for violations of the Act's publication requirement. *See* Fed. Defs.' Reply 14–15. And it does not bother to explain why this case is any different.

Because the Secretary may not decline to sue "on grounds [not] permitted by the statute" or "depart[] from . . . prior practice" without explaining the decision, *see Doyle*, 821 F.2d at 786; *see also Motor Vehicle Mfs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("[A]n agency . . . would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider[.]"), the reliance on the potential for standalone distribution to mitigate the LMRDA's publication requirement is inadequate.

Second, the Secretary found that the publication violation was "mitigated" by the distribution of Mr. Noble's campaign literature in the *Postal Record* elections issue "mailed to NALC's membership on September 9 and 12, 2022." DOL 000012. The Secretary is on better footing with this finding because "NALC mailed ballots *after* September 12, 2022," and "ballots were due by October 21, 2022." *Id.* (emphasis added).[3] Mr. Noble's primary response is that the September mailing was so late that some members (including himself) voted before they received this issue. Pl.'s Opp'n 17–18. But there is no indication that evidence of pre-mailing voting was before the agency at the time of its determination. *See Doyle*, 821 F.2d at 783 n.3. Mr. Noble says that his appeal to NALC "certainly suggested that members voted before receiving the September 2022 issue of the *Postal Record*." Pl.'s Opp'n 17. In support, he points to a statement that "the September 2022 issue 'came out only days before the ballots were mailed.'" *Id.* (quoting DOL 000028). But that statement does not suggest that pre-mailing voting occurred. Mr. Noble also points to a declaration filed in his private lawsuit that he says the Secretary should have been aware of. *Id.* But Mr. Noble did not submit that declaration to the Secretary when he filed his

[3] Because the *Postal Record* mailing occurred *before* the distribution of ballots, Mr. Noble's reliance on cases involving mailings *after* ballot distribution, *see Chao v. Loc. 556, Transp. Workers Union of Am.*, No. 03-2666, 2005 WL 94709, at *1 (N.D. Tex. Jan. 14, 2005), is misplaced.

complaint. Stepping back, even if such materials could properly be considered by this Court, the Secretary's determination that the "campaign advertisement was distributed to the membership before ballots" (and thus, before votes) was not impermissible. Fed. Defs.' Reply 12. The Secretary rejected Mr. Noble's arguments on the basis that the elections issue was mailed before the ballots were mailed, thus mitigating any concern that union membership could not review his campaign materials before ballot voting. DOL 000012. This decision was not "on its face . . . so irrational as to constitute the decision arbitrary and capricious." *Dunlop*, 421 U.S. at 575.

All in all, the Secretary's decision that NALC's violation of the publication requirement "did not affect the outcome of the election" was based on both the impermissible standalone literature determination and the permissible order of mailings determination. DOL 000012. And it is unclear from the Amended Statement of Reasons if the Secretary's decision would stand with one and not the other. In this scenario, the Court "is not authorized to substitute its judgment for the decision of the Secretary." *Dunlop*, 421 U.S. at 571. Rather, the Court must leave it to the agency to supplement its explanation. *Loc. Union No. 639*, 543 F.2d at 379.

**B. Monitoring Requirement**

Mr. Noble next argues that NALC violated the LMRDA's monitoring requirement by not allowing observers adequate time to monitor the ballot tally at the 2022 election. This violation, too, is not in dispute. The LMRDA provides that "[a]dequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots." 29 U.S.C. § 481(c). And the Secretary found a violation of this provision because NALC permitted election observers only a second and a half to review each ballot, which "was not enough time to allow observers to verify the accuracy of the ballot tally." DOL 000013.

But again, the Secretary determined that this violation did not affect the outcome of the election. In doing so, the Secretary re-counted a sample of ballots and concluded that "there was no evidence this violation affected the outcome of any race" because that partial recount found "no discrepancies." *Id.* But in their briefing, the Defendants concede that the re-count did find one discrepancy. *See* Fed. Defs.' Mot. 10 n.10. They ask the Court to disregard that discrepancy as minor. *Id.* However, this Court must "refrain from substitution of its judgment for that of the Secretary." *Dunlop*, 421 U.S. at 572. The agency may determine that one discrepancy is enough to order a full re-count or it may disregard it as *de minimis*. That determination is left to "the special knowledge and discretion of the Secretary," not the Court. *Id.* at 571. All the Court can say is that the Secretary's finding that there were no discrepancies was facially insufficient "in relation to the evidence before the Secretary." *See Doyle*, 821 F.2d at 783 n.3. Only the Secretary can explain the impact of that on the ultimate decision not to commence suit.

**C. Secret Ballot Requirement**

Next, Mr. Noble argues that NALC violated the LMRDA's secret ballot requirement. The LMRDA provides that labor unions shall elect their officers "by secret ballot." 29 U.S.C. § 481(a). And a "[s]ecret ballot" is "the expression by ballot, voting machine, or otherwise, but in no event by proxy, of a choice with respect to any election or vote taken upon any matter, which is cast in such a manner that the person expressing such choice cannot be identified with the choice expressed." *Id.* § 402(k). Mr. Noble contends that NALC violated this requirement because its service provider assigned each ballot a unique identifying number that could be matched to the voter's name in a database. Pl.'s Mot. Mem. 22; DOL 000465. In declining to sue, the Secretary did not consider this argument, finding that Mr. Noble did not first exhaust it with NALC. *See* DOL 000013–DOL 000015. The Secretary inadequately explained the basis for this decision.

Mr. Noble contends that he could not have exhausted this argument. He says that when he submitted his appeal to NALC, he did not know that the identifying numbers on the ballots corresponded to voters' names. Pl.'s Mot. Mem. 20. Relying on jurisprudence governing LMRDA actions against unions, he argues that the exhaustion requirement kicks in only when a candidate is "aware of the facts supporting an alleged election violation." Pl.'s Mot. Mem. 21 (quoting *Hodgson v. Loc. Union 6799, United Steelworkers of Am., AFL-CIO*, 403 U.S. 333, 341 (1971)). And he says that "[t]here is no reason that a stricter standard should apply in the context of a lawsuit brought against the [Labor Department] under the LMRDA." *Id.* The Defendants do not appear to dispute this assertion, instead arguing only that Mr. Noble could have discovered the secret ballot violation through reasonable inquiry. So the Court presumes, without deciding, that Mr. Noble had no obligation to exhaust this claim if the alleged secret ballot violation was not discoverable through reasonable inquiry at the time that he filed his NALC complaint.

In rejecting Mr. Noble's awareness argument, the Secretary found that he had sufficient information to raise this issue with NALC at the outset:

> [Y]ou could have discovered a potential breach of voter secrecy through reasonable inquiry; therefore, the Department cannot look outside the four corners of your December 20, 2022 complaint to investigate additional violations. You allege you only became aware of a possible voter secrecy violation when NALC denied your December 20, 2022 complaint and included information that caused you to believe the six-digit numbers printed on ballots could be used to identify individual voters. However, the investigation found you obtained this information well before NALC's January 6, 2023 denial of your internal complaint. Linda Mann attended the vote count on your behalf as your slate's observer. Mann was aware you wanted to know why a six-digit number was assigned to the ballots because you copied her on an October 22, 2022 message to the union in which you asked, "What are the purposes of the numbers?" At the ballot tally, election committee member Rob Holub spoke with Mann. and, in response to a question from her, explained the purpose of the six-digit numbers. On October 24, 2022, Mann sent you a Facebook message that explained, "*a number is assigned to each ballot to prevent duplicates and so that counters can retrieve ballots rejected by yhe* [sic] *system*." You therefore had sufficient information to raise a voter secrecy violation in your December 20, 2022 complaint to NALC.

DOL 000014–DOL 000015 (emphasis added).

The Secretary's reasoning fails to show a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). The use of an identifying number raises a potential LMRDA violation only if the voter can "be identified with the choice expressed." 29 U.S.C. § 402(k). If the identifying number was anonymized but nevertheless used to prevent duplicates or retrieve rejected ballots, a secret ballot violation would not be discernable. Thus, it is unclear how knowledge that identifying numbers were being used to prevent duplication and retrieve rejected ballots was "sufficient information to raise a voter secrecy violation." DOL 000015. The key fact underlying Mr. Noble's secret ballot contention is that the identifying numbers corresponded to voter's names in a database maintained by NALC's service provider. And nothing in the Secretary's statement suggests that Mr. Noble was aware or reasonably should have been aware of that fact when he initially disputed the election results with NALC. Because "the Secretary's reasons for" non-enforcement "rest on [these] unsubstantiated conclusions," the decision is inadequate. *Loc. Union No. 639*, 543 F.2d at 379.

**D. Adequate Safeguards Requirement**

Finally, Mr. Noble argues that NALC violated the LMRDA's requirement to provide "[a]dequate safeguards to insure a fair election" by failing to check voter eligibility upon receiving ballots, as required in NALC's internal policies. 29 U.S.C. § 481(c); Pl.'s Mot. Mem. 28–29. The Secretary declined to sue on this basis "[b]ecause NALC's mailing list contained only members who were eligible to vote, and because NALC adequately processed duplicate ballot requests, there was no need to check voter eligibility at the ballot tally." DOL 000013. Further, the Secretary noted that Mr. Noble's complaint and the agency's own investigation found no evidence of ineligible voters. *Id.*

Mr. Noble contests this determination. He reasons that "[i]f the mere acts of sending ballots to eligible voter addresses and reviewing duplicate requests were sufficient safeguards under the LMRDA, then the additional verification required by the NALC Regulations would be superfluous." Pl.'s Mot. Mem. 27. And he says that the "LMRDA violation exists based on NALC's failure to apply adequate safeguards to ensure a fair election in accordance with its own regulations — not on whether ineligible members voted." *Id.* at 28. But the LMRDA only requires the agency to sue when it finds "probable cause to believe that a violation" of the *statute* occurred that "may have affected the outcome of the election." *See* 29 U.S.C. §§ 482(b), (c)(2). Although violations of internal policies may be evidence of inadequate safeguards under the LMRDA, the Secretary did not clearly err by failing to treat violations of NALC's policies as a statutory violation. The statute does not incorporate every policy that the union chooses to implement. And the Court cannot conclude that the Secretary was "irrational" by determining that mailing ballots only to eligible voters is an adequate safeguard against fraudulent voting absent any evidence to the contrary. *Dunlop*, 421 U.S. at 573.[4] Accordingly, the Secretary's Amended Statement of Reasons is not arbitrary and capricious with respect to its voter eligibility analysis.

**REMEDIES**

Where the Secretary's statement of reasons is inadequate, the Court "must remand the decision to the Secretary for a supplemental statement of reasons." *Sadlowski v. Marshall*, 464 F. Supp. 858, 863 (D.D.C. 1979). Since the Secretary's decision here "is facially insufficient" on the first three points discussed (the LMRDA's publication requirement, 29 U.S.C. § 481(c), monitoring requirement, *id.* § 481(c), and secret ballot requirement, *id.* § 481(a)), the Court

[4] To the extent that Mr. Noble intended to tie his eligibility argument to his monitoring claim, the Court refers the Parties to its analysis of the monitoring requirement and the Secretary's analysis as to whether monitoring violations affected the outcome of the election. *See* Discussion B.

remands the Secretary's determination and orders the Secretary to provide a supplemental statement of reasons if the Secretary declines to sue. *Loc. Union No. 639,* 543 F.2d at 379.

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Mr. Noble's Motion for Summary Judgment, ECF No. 38, and denies the Defendants' Motion for Summary Judgment, ECF No. 39.

A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date: August 13, 2026